Carl E. STANLEY and Joyce Stanley, Plaintiffs–Appellants,

v.

AMOCO OIL COMPANY, Defendant–Appellee.

No. 91–3424.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1992.

Decided May 26, 1992.

Stephen Owen Walker (argued), Cleveland, Ohio, for plaintiffs-appellants.

Joel C. Levy (argued), Munster, Ind., for defendant-appellee.

Before CUDAHY, EASTERBROOK, and KANNE, Circuit Judges.

PER CURIAM.

Carl Stanley was injured when a forklift unloading his truck stalled and rolled backward, pinching his foot between the pallet and the bed of the truck. He and his wife filed suit against Thomas Keck (the operator of the forklift), P.D.Q. Maintenance, Inc. (Keck's employer), and Amoco Oil Company (on whose premises the accident occurred). The Stanleys, Keck, and P.D.Q. settled their dispute, leaving Amoco the sole defendant. A magistrate judge granted summary judgment to Amoco.

Appellate jurisdiction is the first question—one the parties slighted in their briefs despite the requirement of Circuit Rule 28(b)(2)(v) that when an appeal under 28 U.S.C. § 636(c)(3) is taken from the decision of a magistrate judge, the brief shall state "the dates on which each party consented in writing to the entry of final judgment by the magistrate." Plaintiffs' brief, prepared by Stephen Walker of Cleveland, did not mention consent, and Amoco's brief asserted that appellants' jurisdictional statement "is complete and correct." When we inquired at oral argument, plaintiffs' lawyer observed that he is from Ohio—as if lawyers from outside the circuit cannot be expected to read our rules!—and the lawyer for Amoco (Joel Levy of Munster, Indiana) lacked even such a sickly account.

We gave the parties ten days to file the consents, which we had been unable to locate in the record. The Stanleys' lawyer furnished a new "jurisdictional statement" to which he attached the district court's order referring the case to a magistrate judge but stunningly *again* omitted the dates of the consents and did not include copies. Amoco's lawyer filed nothing until, after several telephone calls from the clerk's office, he produced a document grumbling that, as he had agreed to let the Stanleys' lawyer speak for both sides, he did not see why he had to file separately. In the event, his filing mimicked appellants'.

So we still had neither copies of the consent forms nor the means to locate them. This panel accordingly prepared an order dismissing the case for want of appellate jurisdiction, because, in the absence of consent, review of a magistrate judge's decision lies in the district court. E.g., *Jaliwala v. United States*, 945 F.2d 221 (7th Cir.1991). While making a final check, however, we discovered that copies of the consents had been added to the record, belatedly, by the district court. Perhaps one or another lawyer arranged for this, but neither bothered to tell us.

Both lawyers are responsible for a substantial waste of our time. Failure to file proper jurisdictional materials the first time is bad enough. To file defective statements a second time, after the court has directed the attention of counsel to the subject with particularity, is unfathomable.

That is not the only jurisdictional problem. Federal jurisdiction depends on diversity of citizenship, yet despite Circuit Rule 28(b)(1) appellants' jurisdictional statement does not identify the citizenship of any of the parties. Amoco, recall, certified that this statement is "complete and correct." Neither lawyer had any explanation for this shortcoming other than ignorance and laziness. The court had checked the record and found the details there, with one exception: nothing established Amoco's principal place of business. So we directed counsel to amend the pleadings on appeal, as 28 U.S.C. § 1653 allows, to allege Amoco's principal place of business.

Neither side complied. Both the Stanleys and Amoco filed documents they captioned "jurisdictional statement" asserting that Amoco's principal place of business is in Illinois, which yields complete diversity of citizenship. Yet there is no affidavit to that effect and no motion to amend the pleadings. It is accordingly tempting to dismiss the case for want of subject-matter jurisdiction. But the parties have at least committed to paper their agreement on Amoco's principal place of business, and the consequence of dismissal for failure to supply this in the proper form would be a re-filing and more litigation, in either state or federal court (as we know from other sources that Amoco's corporate headquarters is indeed in Illinois). These lawyers, inexcusably nonchalant about jurisdiction, have already diverted enough time from other litigants' cases to their own. Lest they squander more, we proceed to the merits.

The Stanleys' lead argument on appeal is that Amoco, as owner of the premises where the accident occurred, is vicariously liable for Keck's torts, even though P.D.Q., Keck's employer, was an independent contractor. The magistrate judge ruled out the possibility of vicarious liability because Amoco then would be entitled to recover from Keck and P.D.Q., yet the Stanleys had agreed with these parties to abandon all theories that might generate secondary liability. The Stanleys represented in their settlement agreement with Keck and P.D.Q. that "the causes of action which they have preserved ... against Amoco ... are those that are warranted by the evidence other than those claims which could provide Amoco with a basis for indemnification".

Keck and P.D.Q. were buying peace, of which they would enjoy little if they moved from being defendants in the Stanleys' suit to being defendants in Amoco's third-party action. The Stanleys do not deny that their current strategy against Amoco violates the promise they made to Keck and P.D.Q. Nonetheless, they insist that Amoco cannot

be a third-party beneficiary of the compromise with its fellow defendants. The magistrate judge thought otherwise, concluding that because the only way to give Keck and P.D.Q. the benefit of their bargain was to blot out the premises-liability claim against Amoco, summary judgment was in order. The Stanleys insist that such a conclusion is insupportable, but their lawyer did no more research into Indiana's law of settlements (which governs this case) than into this court's rules of procedure. *Estate of Carnahan v. ISM, Inc.*, 510 N.E.2d 748 (Ind.App.3d Dist.1987), holds that a person exposed to vicarious liability is a third-party beneficiary of a settlement agreement between victim and employee releasing the employee and "his principal or master". That agreement was crafted with the same design as this one: to prevent a third-party action exposing the direct tortfeasor to additional litigation and liability. The Stanleys' agreement with Keck and P.D.Q. did not release Amoco in so many words, but it did by necessary implication, and then the principle of *Carnahan* allows Amoco to invoke the agreement.

■ Amoco remains potentially liable on account of its own negligence, for that would not expose Keck and P.D.Q. to any risk of damages. The magistrate judge's comprehensive opinion addresses all of the Stanleys' theories of direct liability, and we have little to add. Only one subject calls for comment: the Stanleys' submission that the forklift Amoco furnished to Keck had defective brakes as a result of negligent maintenance.

According to the Stanleys' brief, Amoco's repair records establish that the forklift "was entirely without brakes" (emphasis in original). They show a repair of the forklift's brakes one month after the accident. Keck said that the forklift had been used the remainder of the day of the accident without braking problems. The record contains no sign of braking problems in the ensuing weeks. So what could it mean to say that the forklift "was entirely without brakes," we inquired at oral argument? Was there no hydraulic pressure? Had the brake pads dropped off? Beyond the fact of repair one month after the accident there is nothing. Evidence of or based on the repair is inadmissible, Fed.R.Evid. 407, and although documents leading to the repair might reveal the condition of the machine immediately preceding the fix—which would be admissible if it supported an inference about the condition at the time of the accident—these records do not. The service report shows that the mechanic installed a new master cylinder and adjusted the brakes; neither side went beyond this form to determine the condition or operation of the brakes preceding the repair, let alone a month earlier.

All that remains is the contention that Keck's deposition creates a triable issue about Amoco's role in maintaining the forklift. Keck testified: "Forklift died. I hit the brake. The brake didn't take.... I hit the brakes, but nothing happened. [Question: Do you know why?] Evidently, on them type the motor has to be running in order for the brake to work." Keck later supplied an affidavit stating that by the time he slammed on the brake, the pallet had already hit Stanley's foot. Stanley urges us to disregard this affidavit, on the ground that a deposition creating a material issue of fact cannot be annulled by a contradictory affidavit. E.g., *Lovejoy Electronics, Inc. v. O'Berto*, 873 F.2d 1001, 1005 (7th Cir.1989). Yet the affidavit, asserting that any defect in the brakes did not cause the accident, does not contradict the deposition. Moreover, the testimony on its own terms does not imply that Amoco maintained the brakes negligently. To the contrary, Keck tells us why the brakes did not hold: the engine stalled. This implies that the forklift had power brakes; the engine's failure would have increased the pressure needed to operate the brakes and so delayed braking for the moment it took to pinch Stanley's foot. Evidence that the forklift had manual brakes might have contradicted this explanation and made poor repair a candidate by process of elimination, but there is no such evidence. Nothing in this record creates a material dispute calling for trial.

AFFIRMED.